at all. Arguments not to exceed 15 minutes per side. Ms. Dangaran, for appellant. Good morning, Your Honors. It's good to see you again, Chief Judge Sutton. Dee Dangaran, they, them pronouns for the plaintiff appellant, Mr. Fathiree Ali. I'd like to reserve three minutes for rebuttal. Defendants, Michigan Department of Corrections or MDOC, Adamson and Leach substantially burdened Mr. Ali's religious exercise by denying his request for halal meat. Mr. Ali is Muslim and sincerely believes that he is required under the Quran to eat halal meat with his daily meals. Mr. Ali raises three arguments that each provide this court independent grounds to reverse the district court's order, granting summary judgment to defendants. First, the district court failed to draw inferences in Mr. Ali's favor when analyzing the qualified immunity defense to his free exercise claim. Second, the district court dismissed MDOC without addressing the Arlupa injunctive relief claim against it. Finally, the district court denied Arlupa damages claims against individual capacity defendants without considering Tanzan versus Tanvir, recent Supreme Court precedent that abrogated this court's decision in Haight versus Thompson. For all these reasons, this court should reverse and remand. Do you think Tanzan abrogated Haight? So, Your Honor, I think Tanzan abrogated Haight in part. There are three different arguments regarding why we believe Tanzan controls. One's doctrinal and regarding Haight. Chief Judge Sutton, your opinion teed up two different perspectives and approaches for foreclosing individual capacity damages under Arlupa. The first ground was the basis of the holding, that the clear statement... Just cutting to the differences here, Arlupa's spending clause and RFRA is not. RFRA in Tanzan is just applying to federal employees. It's not even clear you need much of a source of authority. You have the authority to create a department. You have an authority to give the department less power, pull power back, which is what RFRA does. That's why in the city of Burney, they allow RFRA to still be good law as applied to the federal government. So, I'm struggling with why we don't have to apply the clear statement rule. So the clear statement rule is what Your Honor should apply. And we believe that Tanzan was done under textual interpretation on the same terms... So it satisfies it. Okay, so your argument is that it satisfies it. Precisely. And if I find a case that says appropriate relief does not clearly establish a right to money damages, would that be a problem? I think Tanzan would disagree with that case because Tanzan discussed the term appropriate relief, the term government, the term official, and the term other person acting under color of state law, all of which are in both RFRA and Arlupa. And we know that RFRA and Arlupa's text is interpreted similarly under Supreme Court precedent and this court's precedent. And so because the court answered those questions, what those terms mean regarding the individual capacity damages for RFRA, that analysis in terms of the text also apply in the Arlupa context. If there are other cases, let's just imagine an 11th Amendment case where a clear statement rule applies and the court has said appropriate relief is not clear enough to waive money damages. Wouldn't we have to follow that? Well, so state sovereign immunity, according to Tanzan, is actually a separate question for this clear statement. And so there's kind of an elevated... Tanzan, I agree with you, the word clear appears in its opinion. But Tanzan never says it's applying a clear statement rule. Right, it's not applying a rule. We can all agree on that. So I'm making the point, if there's authority out there that says the phrase appropriate relief does not suffice to show that money damages are available in a clear statement context, e.g. sovereign immunity, that would be a problem, wouldn't it? State sovereign immunity is different from other defendants. That's what Tanzan actually also applies. But is the clear statement rule of sovereign immunity different from the clear statement rule of spending clause? I don't think there's a case that actually is on that specific point. And so with the... Could be coming. With the guidance from Tanzan, this doctrinal argument that this court was based on regarding appropriate relief would be in tension with Tanzan because of the definition of appropriate relief there. Turning to a second argument, if this is not convincing to this court, though, there is another spending clause legislation that this court has construed allowed a damages claim against officials who were not actually signatories. And this is in the EMTALA context, the Emergency Medical Treatment and Active Labor Act. This court in Moses, Moses v. Providence Hospital and Medical Centers, that's 561 F. 3rd, 578. Remind me, I don't remember this argument. Is this... No. This is a new argument trying to understand this spending clause argument because we do believe that Tanzan is controlling, but this is an argument that was not in the brief. What case is this, then? Moses v. Providence Hospital and Medical Centers. There, there's a 561 F. 3rd, 578. Is it our case? Yes. A published Sixth Circuit opinion from 2009. And there, there's a $50,000 damages fee in the statute, clearly, provided against doctors, even though the hospitals enter the contract, so to speak, under spending clause terms. And this court discussed that and did not raise any doubt that that was a possibility. And so our LUPA would be treated differently from EMTALA if this court finds that there's no, if this court adopts defendant's argument that there's truly no way for an individual capacity damages result from a spending clause case. That's just not true. And so, and finally, just as, you know, as a practical matter... Just so I'm understanding, that, that, that example is spending clause. That example, apply a clear statement rule. And that example found what language clearly satisfied, clearly showed what? What was the key language? What was the language? So the language was clear. It was a $50,000 damages provision that was actually in the statute against doctors. And that's suffice to show you could get $50,000 of damages? From the doctors rather than the hospitals. That sounds pretty clear. Yeah. That's not appropriate relief. I mean, it's not, it's not ambiguous like appropriate relief. Which is... That's specific. Yeah, specific. Which is precisely why we think the, the terms appropriate relief, under color of law, everything that Tanzin does make clear that money damages are what appropriate relief means. Well, that would be great if Tanzin was a clear statement case. It just doesn't say it's a clear statement case. Your Honor, even though it's not a clear statement case, Tanzin is going through the analysis of whether the language itself conveyed damages because of the understanding under text, the understanding under common parlance, right? The, the, the folks who are beholden to RFRA are reading that language and should know because of its common use that, that monetary damages are part of appropriate relief. I want to move on to the other arguments, but just one practical matter here that I think is also relevant because I think defendants have also raised that you can't have damages against a signatory. Here, there is indemnification statute that Michigan actually has covered these individual defendant capacity claims. And so the argument that there's no way someone who's not a part of the contract should be held liable will actually hear these claims officers are going to be covered by Michigan. So Michigan was aware of the fact that these damages would be part of what they were going to be held liable for when they entered. When you say they're aware, they're aware only, I assume that's a general law. That's not a law as applied to RLUIPA. No, but it's regarding that section 1983 RLUIPA, it's a general law, Your Honor. Yes. So turning to qualified immunity, relevant to step one of the qualified immunity analysis, the district, district court erred by resolving two disputes of fact in defendant's favor. But on defendant summary judgment motion, all inferences should be drawn in Mr. Ali's favor. Under the proper standard of review then, these factual disputes preclude summary judgment on Mr. Ali's pre-exercise claim. So on that one, what's your answer to the clearly established point that you need a with their faith, you know, had Haram in lots of times. So, I mean, is that, is that, does that fall into the basket of a, whoa, whoa, whoa, judges can't be questioning sincerity of faith. But I, I would have thought we need a case that says something along those lines and it didn't seem intuitively crazy to say, okay, you say prohibition on Haram, that's great, we'll respect it, but we're noticing hundreds of dollars of purchases that are inconsistent with that. Absent a clear, a clear case on point, here we are, keep going back to the word clear, I don't mean that, clearly established case, why, why isn't that help them on the second prong of qualified immunity? So in regards to the clearly established case, I know that we need there to look at cases that were only pre-2017, but I'll just note that there is a factual dispute regarding the Haram items from the commissary that this court has discussed. And so it's kind of interwoven, the factual dispute as well as the clearly established prong, because the constitutional right at issue altogether that Mr. Ali is alleging is different from how defendants framed it. So this circuit has long held that prison administrators must provide an adequate diet without violating an inmate's religious dietary restrictions. That's the constitutional right at issue. That's what Colvin held in 2010, citing Alexander. That's kind of a general principle, is it not? And usually for qualified immunity, just general principles aren't sufficient, are they? Do you have to be a little more specific? Well, the framing here is about nutrition and adequate diet. And I think that is sufficiently sufficient as it's discussed in Colvin and Ewing v. Finkel, which applied Colvin. And so we believe that the facts here are very similar to Ewing and that there, because Colvin and Welch sufficiently clearly established this constitutional right, the same should apply here. Mr. Ali discusses the fact that he was unable to fully have a nutritious meal at page ID 315, and that was made aware to Mr. Adamson and Mr. Leach at page ID 194 in the religious interview form. So they knew that his claim, if you want to get more specific, is that he was unable to fully have a nutritious meal because of these religious accommodations. When you say fact dispute, I thought it was undisputed that he used the commissary to buy Haram products. Well the dispute is whether that is enough to raise the sincerity discussion that they did because he did not consume the Haram items. And so Ackerman stated that a religious observer does not forfeit his religious rights merely because he is not completely scrupulous in his observance. Colvin also discussed removing prisoners from kosher meal programs for mere possession of a non-kosher food item may be overly restrictive, remanding for further fact development. The fact dispute is whether he ate them. And he says he did not. He said that he bartered with them and he took out the Haram sodium packets. And so because he did not eat them, that's a... Why shouldn't we just ask for a case on that point? In other words, giving the prison guards, prison officials warning that you've really got... It's not enough just to look at the items that you can see he bought. You've got to go one step more and now ask, did he actually eat them? That's what I would take you to be saying. So why shouldn't we require a case that says that? Well, so because the right, when it's framed in step one of the qualified immune analysis properly in Mr. Ali's favor, the right is actually whether he's receiving a nutritious meal full stop. And so that is clearly established by Colvin and Welch. And this discussion about the Haram items is a sideshow. Mr. Ali did everything to make it clear to Mr. Leach, to Mr. Adamson directly, which then Mr. Leach reviewed, saying that he's not able to have a nutritious meal. These commissary items are a substantial burden as well as he's trying to buy these two halal meats there. You mentioned the cost, Your Honor. Those are not sufficient to supplement his diet with halal meat or with nutrition. And so the thing that Ms. Does the vegan diet have worked? Well, not for him. And so the vegan diet would not fully satisfy his religious burden here, his burden on his. It's one halal meat. Exactly. But if he were granted it, it would have, which Mr. Leach was deciding specifically, it would have given him at least the adequate nutrition. One last thing before you sit down and then you'll get your full rebuttal. Why hasn't he done anything since 2017? And that's like, well, he obviously is alive, right? Yes, Your Honor. And he has done this. Continues to eat. Yes. Well, struggles too. He's actually struggling right now. And why, why not just ask for a vegan diet right now? And, you know, if you want halal, you have to get a special request to the department. Has he done all those things or just not in the record? It goes to the first factual dispute I discussed. It goes to the factual dispute regarding Adamson. Adamson. I'm just, I'm asking, I'm making a different point. Yes. Has he done it? And if not, why not? He did not because Adamson said, you will never get meat and meat is what is what he needs. Adamson said, you'll never get it. So that's a complete bar. Adamson still work there? Adamson's the chaplain there still. Yes, I believe. And so not in his prison where he currently is. Ah, I see. Yes. Well, so he did this claim, Your Honor, and he should not, he should not be required. It's an extra burden on him. Substantial pressure. Substantial burden is the test. It would be an additional burden to try to re do an exhaustion process when he's doing this litigation for the exact claim. Okay. Chief, can I ask? Well, yeah, I think you began by saying there were three issues you wanted to argue, and I don't think you touched upon the injunctive relief you request against the Department of Corrections. Could you address that briefly? Yes. Thank you, Your Honor. Um, so Ackerman is controlling here as well. There was a case against the official capacity defendant in Ackerman. We think this is low hanging fruit. MDOC can be sued for the injunctive relief because they are the ones that have this right to provide him, uh, halal meat right now. Do they have a policy? I thought your dispute, your claim was really against Addison and Leach for their implementation, for their actions. And I didn't, I didn't see that there was a claim that the department itself had a policy that was placed in effect here by the individual defendants. Am I wrong on that? We are not asking for a policy change. We are just saying that Mr. Ali is allowed to be provided halal meat for undercurrent policy if MDOC decided it wanted to do it. And so because MDOC was an injunctive defendant, it would actually be saying, can you apply this policy to Mr. Ali and provide him the halal meat that he already requested? Thank you, Your Honor. Okay. Full rebuttal. We'll hear from the other side. Thank you. Good morning, Your Honor, may it please the court. I'm Chris Alex on behalf of the appellees to pick up the thread about a RLUIPA case and the clear statement rule. I think the most controlling precedent comes from the Supreme Court in a non-sovereign immunity case, Arlington Central versus Murphy. That case did not involve concerns of sovereign immunity at all. If you review the statute at issue, the Individuals with Disability in Education Act, it actually includes an express waiver of sovereign immunity at 20 U.S.C. 1403. So in that particular case, the United States Supreme Court applied the clear statement rule without distinction between sovereign immunity or some other facet to say that when Congress employs a money for terms bargain to reach where they otherwise cannot, that comes with a consequence. What are your thoughts on the Moss case that counsel brought up, Moss versus Providence Hospital? How does that apply here, if you're familiar with that? I'm not familiar with that case by virtue of the fact that it was not briefed or cited at all in the briefing. It's evidently, from how it's been discussed, not a RLUIPA case, and I don't believe that anything from that opinion could circumvent what the Supreme Court said in Arlington Central or what this court has said applying Arlington Central in Haight versus Thompson where the court discussed really these same federalism concerns, that the clear statement rule compels Congress to speak clearly about sovereign immunity. It doesn't compel Congress to speak clearly if they want to make a term enforceable on state actors, and in Saussman, the United States Supreme Court held without ambiguity that the term appropriate relief is ambiguous. That was their holding in Saussman, and again, because we're dealing with spending clause legislation, that carries a consequence for enforceability. In the second argument, the point was made that, well, the claim here is getting enough to eat, and that that's clearly established. I took that to be the way the appellant's trying to deal with the clearly established requirement. I guess I'm just curious your response to that. Sure. This is the 1983 free exercise part of the case. As the court pointed out, it is a very general, if I may borrow a phrase, 60,000 feet assessment to say that, on the one hand, adequate diet covers all scenarios where an inmate is claiming that they were denied an accommodation. It would be akin, in an Eighth Amendment case, to saying that because it is well established that inmates are entitled to be free from excessive force, any type of excessive force claim is well established. There's always factual nuance to any type of constitutional claim, particularly in the religious setting, where the court, just like the prison, has to deal with these things in a tenant-specific approach. Here, we're dealing with a tenant-specific accommodation revolving around diet. For example, when the court assesses substantial burden, you may review Record 33-10 and see that, over the course of two months preceding the request, this particular inmate purchased 17 items of halal meat. It says he didn't eat them. He doesn't say he didn't eat the halal meat. He says that he is bartering the non-halal meat. By way of example, it is a ledger that includes every purchase. And when you review it, it has 17 items of halal meat purchased through commissary at $2.15 a piece. So he's buying halal meat, and then he's buying haram meat or haram other products, and he's selling the second one and eating the first? So he claims, yes, in terms of the haram meat. But in terms of substantial burden, this court established in Living Waters, making something more expensive does not in and of itself constitute a substantial burden. And again, because we're dealing with an individualized inmate determination, you can consider the fact that, in total, he is spending only 8% of his commissary expenditures on halal meat, and thereby absolutely has access to it. I thought there was an approach where you could go to the department and say, I want a special diet. In his case, it would be for halal meat. Is that still out there? Is that still a possibility? Yes, that is an alternative menu request, which is a separate process to a degree than making the religious... He would say, I was told I'll never get it, and all I can do is get vegan. Isn't that what he would say? That's what he would say, correct. Has he tried since 2017? Does the record show that? No, it shows the contrary. There is a declaration at record 33-9 from the MDOC employee Dershal is the last name, indicating that there was a single, at least as of 2023 when the record was developed, a single meal request by the inmate. And that revolved around requesting the vegan diet, and that there has never, by this inmate, again, as of the date of the affidavit, been a single request for an alternative menu accommodation to have a vegan diet supplemented by halal meat paid for by MDOC, in contrast to, say, paid for at $2.15 per item through commissary. What about the claim for injunctive relief against the department? So, in context to our fact pattern, what you would need would be three things. You would need wrongdoing by an official, in this case, wrongdoing in the form of Leach, the decision maker, denying the vegan diet. As the court's aware from the record, he doesn't have authority as the special activities coordinator to approve a vegan diet supplemented by halal meat. So you would need wrongdoing in the form of the vegan meal. Number two, you would need either, consistent with Los Angeles versus Lyons, a continuing violation or non-speculative evidence to show that a repeated violation was very likely to reoccur. In other words, it's not isolated. And then number three, most importantly, you would need injunctive relief remedy tailored to the wrongdoing. Whatever you think of steps one and two, the claim under RLUIPA against MDOC fails because the inmate does not want the vegan diet. There would be no purpose to enjoining MDOC to provide a vegan diet that the plaintiff himself says he does not want. So for that reason, the claim against MDOC, even under the rubric of injunctive relief, would fail. I think we understand your argument. Thank you very much. All right. With the court's permission then, I'll return to my seat. Okay. Thank you very much. All right. We have some rebuttal. Your Honor, just quickly, Arlington Central, as defendants said at their brief, page 53, was an official capacity claim. So it's not relevant here on an individual capacity damages claim. The RLUIPA injunctive relief, you heard my friend say Leach was the decision maker. The issue here is that MDOC is the decision maker. They are able to provide this injunctive relief. Leach is no longer the person that would need to... What's the MDOC policy? The MDOC policy did say that he could file this alternative form. That was Adamson's responsibility. Adamson said, and this is to the damages claim, no, you will never be able to get meat. I've been in the meetings. They will not give you meat ever here. How is there a policy by the MDOC when it appears to me that your allegation is that Adamson violated the policy? There's a claim against MDOC because in Ackermann, a statewide official was the party to sue to prove that he violated the policy. He was the party to provide these kosher meals to the kosher, to the Jewish plaintiffs there. So you say there's vicarious liability? Is that your theory? No. The statewide official or MDOC itself is enough, is sufficient for an RLUIPA suit for injunctive relief. So suing the statewide official there who was not... Not if they haven't done anything wrong. I mean, you have to establish a violation, I think. I don't see that you claim that their policy violates his constitutional rights. It's what the employees did that allegedly violated his constitutional rights, not what the DOC did. Yeah, I suppose it is perhaps helpful to think about it then as vicarious liability, but I know in the 1983... There isn't vicarious liability. Not in the 1983 context. I'm not certain if that is the case in the RLUIPA context. RLUIPA does allow the government, it binds the government to provide injunctive relief, we know that. And so the government that was sued in MDOC could provide this relief. And in the context of this case, they did not, when Adamson said, no, you will not be able to go through the meat process, I'm going to divert you to the vegan meal process. I want to make sure I'm understanding your answer to Judge Griffin. So it's an MDOC policy, but it's one... Because it's injunctive, we're now talking injunctive. So it's one that's there now. What is the policy now that has to be enjoined? Not from 2017. What is the policy now that has to be enjoined? My understanding, I don't know... My understanding is that Mr. Ali wants the alternative meal, the special meal request. And that is something that would allow him to have halal meat. The policy does contemplate that individuals can ask for meat, even though they are on the vegan... There's nothing that prohibits him from making that request. And he hasn't made it for, whatever, eight years. Again, the claim that he put forward from the beginning did make the request. This litigation is seeking that. This is premised on the conversation about, you've got to do vegan and you'll never get anything else. That's why you're saying that's the policy. Exactly, Your Honor. I know my time has expired, I just had two more points. Regarding commissary meats, again, Mr. Ali is paying out of his pocket because there's this bar that Adamson told him he cannot get meat. So there is a substantial burden if he has to get his entire religious exercise fulfilled himself. What's the clearly established precedent that proves that? Colvin and Welch is the precedent there. I think the last point I wanted to make was the second ground denounced by this court in hate should be denounced again. That second ground being this idea that you said that proves too much to say that a clear statute could not allow for individual damages. But here it did because of the clear statement. And so we just ask you to uphold that second discussion that you had in hate, Chief Judge Sutton. And with that, we think that there's grounds to reverse and remand. Thanks to both of you for your helpful briefs and for answering our questions at argument which we always appreciate.